**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID HUDSON,

      Petitioner,                 CASE NO. 2:06-CV-15753

v.                               HONORABLE ARTHUR J. TARNOW
                               UNITED STATES DISTRICT JUDGE

CINDI CURTIN,

      Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

David Hudson, ("Petitioner"), presently confined at the Oaks Correctional Facility in Manistee, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction and sentence on one count of armed robbery, M.C.L.A. 750.529; one count of malicious destruction of a building causing less than $ 200.00 in damages, M.C.L.A. 750.380(5); and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Oakland County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent has not provided a counter-statement of facts in its answer to the petition. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent

with the record, because the respondent has not disputed them. *See Dickens v. Jones,*
203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).

Roxanne Motichka testified that she was working as a cashier at the Heckel and
Jeckel Party Shop in Oxford, Michigan, on April 18, 2003.  Motichka testified that a man
carrying a small silver-colored handgun walked into the store, pointed the gun at her,
and ordered her to put the phone down.  The man walked up to Motichka, grabbed her
around the neck, and ordered her to open the cash register.  The man then ordered
Motichka to lie down on the floor.  Motichka described her assailant as being dressed in
dark clothing, wearing a hooded sweatshirt or a ski mask and having a paint ball mask
over that.  Motichka saw her assailant's blue eyes through his mask.  Motichka knew
that the man was white, because she could see his skin through the eye-part of the
mask.  The man was wearing gloves.  Money was taken from the store's cash register.
A box was also removed from below the cash register.

Motichka did not recognize her assailant at the time of the robbery, but she was
able to identify petitioner as being her assailant when she viewed the store's security
videotape about two weeks later.  Motichka testified that petitioner had been a customer
of the store a few times.  Motichka testified that she could identify petitioner in the
videotape from the way he walked and by his voice.  Having known him for about a
month, Motichka said she had no doubt in her mind that it was petitioner who committed
the robbery.

Petitioner's parole officer, Michael Perilloux, testified that he saw the store
surveillance videotape of the robbery at the Oxford Police Department and identified the

voice of the assailant as being petitioner's voice, based upon his prior contacts with petitioner.

Carl Rouse, a friend of petitioner's girlfriend, Melissa Worley, testified that he met petitioner in May when he ran into them at a bar.  Worley was living above Curves, which is located next door to Heckel and Jeckel's.  Rouse and his girlfriend, Karen Allen, went to Worley's apartment to drink and spent most of the night there.  Petitioner asked Rouse if he was interested in robbing a couple of houses with him.  Rouse told petitioner that he would not do anything like that.  Petitioner then grabbed a pair of gloves from behind an amplifier in the apartment.  Petitioner later talked about the robbery of Heckel and Jeckel's and informed the others that he had to leave town.  Rouse subsequently contacted the police and told him that he knew the person who had robbed the party store.  Rouse was told to stay in touch with the police if he heard more.

The following day, Rouse, Allen, Worley and petitioner went to a motel in Pontiac, Michigan, where they stayed for two days.  On Sunday night, the four left the motel and went back to Worley's apartment.  Rouse testified that petitioner did not want to get out of the car and slipped down into the seats.  Petitioner asked Rouse to get everything out of the apartment and bring down the amplifier.  Worley and petitioner left as soon as Rouse finished putting things into their car trunk.

Petitioner subsequently asked Rouse if he could get him a gun, explaining that he had to get rid of his gun "quick."

Rouse contacted the police and arranged for the police to pick them up at a bar.  As they left the bar's parking lot, the police pulled them over and arrested petitioner.

3

Petitioner asked Rouse to identify him to the police as David Pike. He also asked Rouse and Allen what color his eyes were and they told him green. Petitioner was satisfied with this answer. Petitioner then asked Worley to give him her cell phone. Petitioner called a woman named Katrina and told her to get rid of all his "stuff" and to stick with the story in which they had talked about petitioner being with her. Rouse testified that petitioner told him he "did it," which Rouse took as an admission by petitioner that he had robbed the store.

Paul Owens testified that while they were incarcerated at the Oakland County Jail, petitioner told him that he had robbed the Oxford party store. Petitioner informed Owens that he was wearing all black clothing and a mask. Petitioner also wore blue contact lenses as a disguise.

Justin Cochran testified that at around 11:30 p.m. on the night of the robbery, he went over to the apartment where petitioner was living with his girlfriend and watched petitioner put on a hooded sweatshirt, a blue jacket, and black gloves. Petitioner also put on a paint ball mask and then asked Cochran to go to the party store to find out if anyone was there. Cochran went into the store, bought a pack of gum, and went back to the apartment. When Cochran informed him that no one was at the store, petitioner said he was "going to hit a lick," which Cochran understood to mean to commit a robbery. After petitioner left the apartment, his girlfriend went to the back window of the apartment and looked for cars. When petitioner returned to the apartment, Cochran saw him carrying a brown box and

a small Beretta cigarette lighter.  Petitioner asked Cochran to tell his roommate Brian

Dawson that he had some money that petitioner owed Dawson for hitting his truck.

Melissa Worley testified that on April 18, 2003, she met petitioner after she got

home from work around 5 p.m.  They talked for about 1-1/2 hours, before Worley took

petitioner over to his friend Katrina's house around 6:30 p.m.   Worley knew there was a

warrant out for petitioner's arrest and was concerned because he had not reported to

his parole officer.  Worley did not see petitioner that day after she had taken him to

Katrina's house.

Katrina Kostrzewa testified that she spent the evening of April 18, 2003 with

petitioner at her condominium in Waterford, Michigan  after petitioner arrived there

around 6 or 7 p.m.  Petitioner spent the night with her and left around

7 a.m. the following day.

Petitioner testified that on the day of the robbery, he ran around collecting and

picking up money, as well as dropping things off at friends' houses.  Petitioner met

Worley at her apartment at around 5 p.m. when she got off work.  Petitioner and Worley

spent time together.  Petitioner testified that he had a condo in Waterford and needed to

go back there to take care of a few matters.  Petitioner admitted to being on the run,

was not driving either of his cars, and was not carrying his driver's license.  Worley

dropped petitioner off at his condo between 6 p.m. and 7 p.m., where he spent the rest

of the evening.  Katrina made dinner for petitioner and he then got drunk before going to

bed.  Petitioner left the condo around 7 a.m. the next morning.

Petitioner admitted that he had been having problems with his parole officer and had stopped reporting to him. Petitioner was on the run for failing to report on parole and knew there was a warrant out for his arrest. Petitioner admitted that he told the police his name was David Pike. Petitioner was aware that the police had wanted to talk to him about the robbery, but he did not turn himself in to the police, because he had absonded from parole.

Petitioner denied telling Rouse that his eyes are green. Petitioner admitted that he had prior convictions for armed robbery, an unarmed robbery, and a financial transaction device offense. Petitioner admitted that he called Katrina when he was arrested, but asked her to pick up his things, not to get rid of them. Petitioner denied telling Paul Owens that he had committed an armed robbery. Petitioner testified that he had never worn contact lenses in his life and could not even put them in. Petitioner testified that Cochran was on parole, owed petitioner money, knew the actual perpetrator of the robbery, and was involved in the robbery because he knew a lot about the details.

In rebuttal, Oakland County Sheriff's Department Detective John Robertson testified that sometime around May 2, 2003, he received a phone call from a probation officer about a possible suspect in the robbery and found out that the Oxford police had received information from a source about the same suspect. Robertson interviewed Worley, who told him she gotten off work on April 18, 2003, at 4 p.m., went to her sister's house in a trailer park, and watched videos there until 8 p.m. Worley said she then went home.

Neither petitioner nor respondent has provided any facts to this Court in regards to the malicious destruction of a building conviction.  However, the Michigan Court of Appeals summarized the facts regarding this conviction, in their opinion affirming petitioner's conviction.  This Court will recite verbatim the relevant facts regarding petitioner's conviction for malicious destruction of a building from this opinion, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> There was sufficient evidence to support defendant's conviction of malicious destruction of a building.  First, the property clearly belonged to the Oxford Police Department.  Second, a reasonable juror could easily have inferred that defendant "injured," i.e., damaged, the building. Circumstantial evidence and the reasonable inferences that arise from the evidence can adequately establish the elements of the crime.  An officer testified that sometime after defendant was removed from the holding cell, he lodged another suspect in the cell who immediately notified officers that some pieces of aluminum angle iron were in the cell.  No other suspect occupied the cell after defendant. The angle irons are usually attached to the cell door about four feet off the ground and hold the plexiglass which covers the door.
>
> The prosecution exhibited a surveillance tape of the cell.  The tape shows defendant pulling at the aluminum bars on the door located about four feet off the ground, squatting down, and apparently yanking at something.  This evidence easily supports an inference that defendant damaged the property. Third, defendant's intent can be inferred from his actions.  Willfulness indicates a purposeful act.  In this regard, it is apparent that the damage to the building was willful because there was no plausible basis for a claim of accident.  Finally, the parties stipulated that the extent of damage was less than $200.
>
> *People v. Hudson,* No. 252851, * 5 (Mich.Ct.App. March 22, 2005)(internal citations omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 474 Mich. 873; 703

N.W.2d 811 (2005). Petitioner now seeks the issuance of a writ of habeas corpus on the

following grounds:

> I. The trial court abused its discretion and reversibly erred in allowing the prosecutor to impeach the defendant on prior armed robbery and other unarmed robbery convictions, and refusing to permit counsel to show the jury a videotape of the interrogation of the defendant's girlfriend, and in permitting the prosecutor to introduce other acts evidence.

> II. The evidence was insufficient to support the conviction of the malicious destruction of a building less than $ 200.

> III. The trial court reversibly erred in scoring 10 points on OV 4 and in scoring 10 points on OV 14.

> IV. The trial court violated the U.S. and Michigan Constitutions in sentencing the defendant to a prison term of fifteen to forty years on the habitual offender fourth supplement arising out of the armed robbery conviction.

> V. The trial court violated the defendant's constitutional rights by sentencing him based on facts not found by the jury beyond a reasonable doubt.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The other acts evidence/prior convictions claims.**

The Court will consolidate petitioner's state law evidentiary claims together, because they are interrelated.

Petitioner first contends that the trial court improperly admitted "prior bad acts" or "other acts" evidence by allowing the prosecutor to introduce evidence that petitioner had a prior conviction for armed robbery.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility

of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

Moreover, the Michigan Court of Appeals ruled that the evidence of petitioner's 1995 armed robbery was admissible to prove petitioner's identity as the robber in this case, because of the substantial similarity between the offenses. *Hudson,* Slip. Op. at * 2. In *Manning v. Rose*, 507 F. 2d 889, 890-895 (6th Cir. 1974), the Sixth Circuit held that a state trial court's admission of testimony as to another robbery for the limited purpose of identification, did not violate due process, where the petitioner had asserted an alibi defense. Petitioner in this case likewise raised an alibi defense. Because the issue of petitioner's identity was placed into issue by this defense, the admission of this prior robbery to establish petitioner's identity did not violate due process. *Id.* at 895. Petitioner is not entitled to habeas relief on this claim.

As a related claim, petitioner contends that the trial court erred in permitting the prosecution to impeach petitioner's credibility with his prior convictions for armed

robbery, unarmed robbery, and stealing or carrying away a financial transaction device.

Petitioner's challenge to the state trial court's decision to allow the prosecutor to use petitioner's prior convictions for impeachment purposes is not cognizable on habeas review, because it does not present a constitutional issue. *See Peoples v. Fulcomer,* 731 F. Supp. 1242, 1244 (E.D. Pa. 1990). The Michigan Court of Appeals reviewed the trial court's decision to allow the prosecution to impeach petitioner with his prior convictions in light of the balancing test set forth under M.R.E. 609 and Michigan law for the admission of prior convictions and found no error. *See Hudson,* Slip. Op. at * 3-4. This Court concludes for the same reasons indicated by the Michigan Court of Appeals that the use of petitioner's prior convictions to impeach his credibility did not render his trial so fundamentally unfair so as to deprive him of his constitutional rights. *See Shacks v. Tessmer,* 9 Fed. Appx. 344, 353 (6th Cir. 2001). Petitioner is not entitled to habeas relief on this claim.

### B. Claim # 1. The right to present a defense claim.

Petitioner next contends that the trial court deprived petitioner of the right to present a defense by refusing to allow petitioner's counsel to present a videotape of the police interrogation of one of petitioner's alibi witnesses, Melissa Worley, into evidence. Petitioner wanted to introduce this evidence to show that the police had intimidated Worley into giving the answers that she made to the police.

The Michigan Court of Appeals upheld the trial court's decision to exclude the videotape, because the trial court had excluded the tape as being unfairly prejudicial to

petitioner, in that it mentioned a polygraph examination and further mentioned the fact that armed robbery carried a potential life sentence.  The Michigan Court of Appeals further noted that the tape was only marginally relevant and contained statements that were prejudicial to petitioner.  The Michigan Court of Appeals concluded that the same evidence of the alleged intimidation could have been elicited from petitioner's girlfriend without the dangers of the unfair prejudice that were presented by the tape.  Finally, the trial court allowed petitioner to question the officer who interviewed Worley about his interrogation techniques. *Hudson,* Slip. Op. at * 4.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is

repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

In *Amunga v. Jones,* 51 Fed. Appx. 532, 539-40 (6th Cir. 2002), the Sixth Circuit rejected an almost identical claim, ruling that the state trial court did not deprive the petitioner of his rights to present a defense and to confront the witnesses against him by refusing to admit into evidence the entire videotape of his police interrogation, where the videotape contained four hours of discussion of a polygraph, which was inadmissible testimony under Michigan law. The Sixth Circuit concluded that the trial court's enforcement of state evidentiary rules did not abridge the petitioner's right to present a defense, given that the rule against the admission of polygraph testimony was neither arbitrary or disproportionate to the purpose of excluding unreliable

13

evidence. The Sixth Circuit further rejected the claim by noting that the petitioner was able to introduce the facts of the police officer's interrogation and was able to testify on his own behalf. *Id.* at 540.

In the present case, the trial court based its decision to exclude the videotape of Worley's interrogation because it mentioned a polygraph examination. The trial court's decision to enforce Michigan's evidentiary rules did not violate petitioner's right to present a defense, because the rule against admitting testimony concerning polygraph evidence was neither arbitrary or disproporationate to the purpose of excluding unreliable evidence. *Amunga,* 51 Fed. Appx. at 540. Finally, because petitioner was able to question the officer who interrogated Worley about his interrogation techniques and Worley herself testified, the exclusion of the videotape did not deprive petitioner of the right to present a defense. *Id.* Petitioner is not entitled to habeas relief on this claim.

### C. Claim # 2. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him of malicous destruction of a building, although he has offered no argument to this Court as to why his conviction should be reversed on this basis.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of

insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). Moreover, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Adams,* 280 F. Supp. 2d at 714 (*quoting Jackson,* 443 U.S. at 324, n. 16).

In making a determination whether the state court's application of the *Jackson* standard in resolving petitioner's sufficiency of evidence claim was contrary to, or an unreasonable application of, Supreme Court precedent, this Court must afford the state court's findings of facts a presumption of correctness unless petitioner can establish by clear and convincing evidence that the state court's factual determination was erroneous. *See Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002)(internal citations omitted). In this case, petitioner has failed to establish that the Michigan Court of Appeals' findings of facts in resolving his sufficiency of evidence claim were clearly erroneous. *Id.* at 975. Because petitioner has not challenged the accuracy or completeness of the Michigan Court of Appeals' findings of fact, this Court will rely on them in resolving petitioner's sufficiency of evidence claim.

The elements of malicious destruction of a building less than $ 200.00 involves the following elements:

(1) the building belonging to a person other than defendant,
(2) the defendant destroying or "injur[ing]" the building,
(3) the defendant acting willfully and maliciously in doing so, and
(4) the extent of the damage being some amount less than $200.
*See* M.C.L.A. 750.380(1), (5).

15

There was sufficient evidence to convict petitioner of this offense.  The surveillance evidence from the holding cell showed petitioner pulling at the aluminum bars on the door, then squatting down and yanking at something.  After petitioner was removed from this cell, another suspect who was placed in the cell notified an officer that some pieces of aluminum angle iron which are usually attached to the cell door had been removed and were inside the cell.  No other suspect had been placed in the cell after petitioner.  The evidence in this case supports an inference that petitioner damaged the jail property, so as to support his conviction for malicious destruction of a building.  Accordingly, petitioner is not entitled to relief on this claim.

**D.  Claims # 3, 4, and # 5.  The sentencing claims.**

Petitioner finally brings several challenges to his prison sentence.

Petitioner's sentence of fifteen to forty years was within the statutory limits for the charges of armed robbery and being a fourth felony habitual offender.  A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000).

The U.S. Constitution does not require that sentences be proportionate.  In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict

proportionality between the crime and sentence.  The Eighth Amendment forbids only

extreme sentences that are grossly disproportionate to the crime. *Harmelin,* 501 U.S.

at 1001.

Successful challenges to the proportionality of a particular sentence in non-

capital cases are "exceedingly rare". *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

Federal courts will therefore not engage in a proportionality analysis except where the

sentence imposed is death or life imprisonment without parole. *See Seeger v. Straub*,

29 F. Supp. 2d 385, 392 (E.D. Mich. 1998).  Petitioner's claim that his sentence is

disproportionate under Michigan law thus would not state a claim upon which habeas

relief can be granted. *See Whitfield v. Martin,* 157 F. Supp. 2d 758, 761 (E.D. Mich.

2001).

Petitioner further contends that the sentencing guidelines were incorrectly

scored.  The state trial court's allegedly improper interpretation of the state's

sentencing guidelines is not a cognizable claim for federal habeas review. *Whitfield,*

157 F. Supp. 2d at 762.  Petitioner has no state-created interest in having the Michigan

Sentencing Guidelines applied rigidly in determining his sentence. *See Shanks v.

Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).  Petitioner's claim that the

sentencing guidelines were incorrectly scored fails to state a claim upon which habeas

relief can be granted. *Cook,* 56 F. Supp. 2d at 797.

Petitioner finally contends that in scoring the sentencing guidelines range, the

trial court violated the Supreme Court's holding in *Blakely v. Washington,* 542 U.S. 296

(2004), where the Supreme Court held that other than the fact of a defendant's prior

conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The decision in *Blakely* has no application to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09. Because *Blakely* does not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's scoring of petitioner's sentencing guidelines range did not violate petitioner's Sixth Amendment rights. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *cert. den.* 128 S. Ct. 1898 (2008).

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: June 13, 2008

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 13, 2008, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary